# United States Court of Appeals

*for the*

# Third Circuit

Case No. 24-3005

SOCIEDAD CONCESIONARIA METROPOLITANA DE SALUD S.A.,

*Petitioner-Appellant,*

- v. –

WEBUILD S.P.A.

*Respondent-Appellee.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF DELAWARE
NO. 1-23-CV-01175, HONORABLE COLM F. CONNOLLY

## PETITION FOR PANEL REHEARING AND
## REHEARING *EN BANC*

HENRY E. GALLAGHER, JR.
ALAN R. SILVERSTEIN
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
(302) 757-7300

JAMES M. HOSKING
ANDREAS A. FRISCHKNECHT
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, New York 10019
(212) 257-6960

*Counsel for Respondent-Appellee*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1.1, Webuild S.p.A. hereby discloses that its parent company is Salini S.p.A. Webuild S.p.A. is a publicly traded company listed on the Milan Stock Exchange. More than 10% of Webuild S.p.A.'s stock is held by Cassa Depositi e Prestiti Equity, S.p.A., a joint-stock company under public control, whose majority shareholder is the Ministry of Economy and Finance of Italy.  No publicly owned company not a party to this appeal has a financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......................................................................................................1

BACKGROUND ......................................................................................................5

I.  Factual Background and Procedural History ...................................................5

II.  The Panel's Decision .......................................................................................7

REASONS FOR GRANTING REHEARING ........................................................8

I.  The Panel Decision Deepens a Circuit Split Over Whether Minimum
    Contacts are Required to Enforce a Foreign Arbitral Award.........................8

II.  The Panel Decision Squarely Conflicts with *Shaffer*..................................10

III.  The Panel Decision Departs from a Prior Panel Decision Authorizing
     Successor Jurisdiction Only Where a Plaintiff Seeks to Impute a
     Predecessor Corporation's Forum Contacts to an Alleged Successor ..........13

CONCLUSION ......................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Air Sea Int'l Forwarding, Inc. v. Glob. Imports & Trading, Inc.*,
No. CV 03-268(PGS), 2008 WL 11510000 (D.N.J. Apr. 18, 2008) ...................14

*Am. Ests. Wines, Inc. v. Kreglinger Wine Ests. Pty, Ltd.*,
No. CIV.A.07-2474(JAG), 2008 WL 819993 (D.N.J. Mar. 25, 2008)................15

*Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"*
283 F.3d 208 (4th Cir. 2002) ..............................................................1, 9

*Black Ship, LLC v. Heartland Payment Sys., LLC*,
No. CV 21-13855 (ZNQ) (DEA), 2023 WL 3585329 (D.N.J. May 22, 2023) ...14

*Bunge S.A. v. Pacific Gulf Shipping (Singapore) Pte. Ltd.*,
No. 3:19-CV-00491-SB, 2020 WL 1528250 (D. Or. Mar. 31, 2020) ................15

*Burnham v. Superior Ct. of Cal.*,
495 U.S. 604 (1990)...........................................................................................11

*Cerner Middle E. Ltd. v. iCapital, LLC*,
939 F.3d 1016 (9th Cir. 2019) .............................................................................9

*Flagship Interval Owner's Ass'n, Inc. v. Phil. Furniture Mfg. Co.*,
No. CIV09-1173 JBS/JS, 2010 WL 1135736 (D.N.J. Mar. 22, 2010) ................14

*Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*,
582 F.3d 393 (2d Cir. 2009) ................................................................................9

*Gorton v. Air & Liquid Sys. Corp.*,
303 F. Supp. 3d 278 (M.D. Pa. 2018) ................................................................16

*Gov't of the Lao People's Democratic Republic v. Baldwin*,
No. 2:20-CV-00195-CRK, 2021 WL 5435114 (D. Idaho Nov. 19, 2021)..........15

*In re DES Cases*,
789 F. Supp. 552 (E.D.N.Y. 1992) ....................................................................16

*In re Nazi Era Cases Against German Defendants Litigation*,
    153 F. App'x 819 (3d Cir. 2005) ...............................................3, 13, 14

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982)...................................................................12

*New Jersey Dep't of Env't Prot. v. E.I. du Pont de Nemours & Co.*,
    No. CV 19-14758, 2021 WL 6064842 (D.N.J. Dec. 20, 2021) ..........................14

*Occidental Chem. Corp. v. 21st Century Fox Am.*,
    No. CV 18-11273, 2020 WL 13890453 (D.N.J. July 10, 2020).........................14

*Penco Prods., Inc. v. WEC Mfg., LLC*,
    974 F. Supp. 2d 740 (E.D. Pa. 2013) ...............................................14

*Shaffer v. Heitner*,
    433 U.S. 186 (1977)...............................................................*passim*

*Sociedad Concesionaria Metropolitana de Salud S.A. v. Webuild S.p.A.,*
    2026 ONCA 28 .......................................................................6

*Sociedad Concesionaria Metropolitana De Salud S.A. v. Webuild S.P.A.*,
    No. 3:24-CV-02043 (SVN), 2026 WL 84524 (D. Conn. Jan. 12, 2026)..............6

*Telcordia Tech Inc. v. Telkom SA Ltd.*,
    458 F.3d 172 (3d Cir. 2006) ......................................................12

*Walden v. Fiore*,
    571 U.S. 277 (2014)...............................................................12

*Walker v. Highmark BCBSD Health Options, Inc.*,
    No. 2:20-CV-01975-CCW, 2022 WL 1912922 (W.D. Pa. Jun. 3, 2022)............14

**Statutes & Rules**                                                      **Page(s)**

Fed. R. App. P. 40(b)(2)(C)...................................................10

**Other Authorities** **Page(s)**

Brief of *Amicus Curiae* Professor George A. Bermann in Support of Petitioners, *CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, Nos. 23-1201, 24-17 (U.S. Dec. 11, 2024), 2024 WL 5119390 ..............................................................................9

Del. Div. of Corps., Annual Report Statistics, *A Message from the Secretary of State Charuni Patibanda-Sanchez, available at* https://corp.delaware.gov/stats/ (last visited June 11, 2026) ..............................................................................4

William J. Moon, *Delaware's Global Competitiveness*, 106 Iowa L. Rev. 1683 (2021)..............................................................................4

## LOCAL APPELLATE RULE 35.1 STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to (1) the United States Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186 (1977); (2) the Fourth Circuit's authoritative decision in *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208 (4th Cir. 2002); and (3) the decision of a panel of this Court in *In re Nazi Era Cases Against German Defendants Litigation*, 153 F. App'x 819 (3d Cir. 2005).

Further, I express a belief, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance—namely, whether a foreign arbitration award may be enforced in a *quasi in rem* action against a defendant that was not a party to the arbitration and arbitral award, even when that defendant lacks minimum contacts with the forum.

*/s/ Andreas A. Frischknecht*

Andreas A. Frischknecht
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
a.frischknecht@chaffetzlindsey.com

*Counsel for Respondent-Appellee*

## INTRODUCTION

In *Shaffer v. Heitner*, 433 U.S. 186, 212 (1977), the United States Supreme Court held that a court's assertion of *quasi in rem* jurisdiction, like other forms of personal jurisdiction, "must be evaluated according to the standards set forth in *International Shoe* and its progeny." The panel decision that a defendant foreign corporation's ownership of shares in a local subsidiary, standing alone, empowers district courts to adjudicate unrelated disputes over whether the defendant agreed to assume another foreign corporation's debt, squarely conflicts with *Shaffer*.

The panel decision also deepens a circuit split between the Fourth Circuit, on the one hand, and the Ninth and Second Circuits, on the other hand, over *Shaffer*'s application in proceedings to enforce foreign arbitral awards. The Fourth Circuit has squarely held that *Shaffer* forbids the exercise of jurisdiction based solely on an arbitral award debtor's ownership of in-state property that "bears no relationship to the arbitration award [the creditor] seeks to confirm." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 214 (4th Cir. 2002). In contrast, the Ninth and Second Circuits have held that *Shaffer* authorizes *quasi in rem* jurisdiction in award enforcement proceedings regardless of minimum contacts where the defendant was a party to the underlying arbitration. But the panel decision adopted neither existing approach and instead created a three-way circuit split by announcing a sweeping new rule: in the panel's analysis, *Shaffer* "does not preclude

1

[an enforcing court] from determining whether" a *non-party* to a foreign arbitration is liable for the resulting award. Opinion at 31. The panel decision's novel reading of *Shaffer* stands alone, and it warrants review by the full Court.

Petitioner-Appellant Sociedad Concesionaria Metropolitana de Salud S.A. ("SCMS") obtained an arbitral award (the "Award") against an Italian company, Astaldi S.p.A. ("Astaldi"), in a Chilean arbitration. SCMS later commenced proceedings in Delaware (among other places) to enforce the Award against Respondent-Appellee Webuild S.p.A. ("Webuild"), another Italian company that acquired a subset of Astaldi's assets while Astaldi was in Chapter 11-style restructuring proceedings in Italy. Webuild's contested liability for the Award thus hinges on what the panel characterized as a "complex, heavily factual successor-in-interest question." Opinion at 33. It is undisputed that neither the Chilean arbitration between SCMS and Astaldi, nor Webuild's asset acquisition in Italy, had anything to do with Delaware or the United States. The sole claimed basis for jurisdiction is Webuild's unrelated ownership of shares in a Delaware holding company.

On this record, the panel held that nothing in *Shaffer* "precludes the District Court from determining whether Webuild assumed Astaldi's obligation under the [A]ward." Opinion at 31. The panel relied on dicta in *Shaffer*'s footnote 36 addressing a hypothetical scenario where "it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff." *Shaffer*, 433

2

U.S. at 210 n.36.  The panel held this case falls within the footnote because, "*[i]f the District Court determines* that Webuild is Astaldi's successor in interest, then a 'court of competent jurisdiction' *will have determined* that 'the defendant is a debtor of the plaintiff.'"  Opinion at 31-32 (citation modified).

The quoted reasoning reveals the irreconcilable conflict between the panel decision and the *Shaffer* footnote on which it relied:  by definition, where a judgment or award holder seeks enforcement against a non-debtor's property, no "court of competent jurisdiction" has yet determined that "the defendant is a debtor of the plaintiff."  Thus, even assuming that footnote 36, as the panel decision held, "preserves attachment jurisdiction in th[e] limited circumstance" of an action "to collect on [a sister-state] judgment" (Opinion at 21), and that a foreign arbitral award properly may be treated as the functional equivalent of a sister-state judgment (*id*. at 26-31), *Shaffer* unequivocally forbids jurisdiction based solely on a foreign defendant's ownership of property in the forum state where the defendant's liability for the judgment or award has never been adjudicated.

Review is further warranted because the panel decision's holding that courts may exercise "successor jurisdiction" absent minimum contacts departs from the prior decision of this Court in *In re Nazi Era Cases Against German Defendants Litigation*, 153 F. App'x 819, 822 (3d Cir. 2005).  Courts in this Circuit have consistently read that decision as authorizing successor jurisdiction only where a

plaintiff seeks to impute a predecessor corporation's *forum contacts* to an alleged successor. Yet the panel decision, in passing and without further analysis, now sweeps away this longstanding limitation.

The panel decision will have far-reaching consequences beyond this case. Delaware's status as the preeminent U.S. jurisdiction for corporate formation remains uncontested, with fully two thirds of U.S. Fortune 500 companies incorporated in the state.[1] Yet, Delaware must compete in an "emerging global market for corporate charters," and commentators have highlighted "Delaware's weakness in attracting foreign companies in recent years."[2] Foreign corporations may think twice about holding their U.S. businesses through Delaware subsidiaries if doing so will expose them to property-based jurisdiction for disputes having nothing to do with Delaware or the United States.

This is the rare decision that warrants rehearing. It conflicts with precedent and deepens a circuit split. It has important and far-reaching ramifications for foreign corporations with subsidiaries incorporated in this Circuit. And it is wrong. The petition should be granted.

---

[1] *See* Del. Div. of Corps., Annual Report Statistics, *A Message from the Secretary of State Charuni Patibanda-Sanchez* ("66.7 Percent of all Fortune 500 companies are incorporated in Delaware.") (2025), *available at* https://corp.delaware.gov/stats/ (last visited June 11, 2026).

[2] William J. Moon, *Delaware's Global Competitiveness*, 106 Iowa L. Rev. 1683, 1691, 1708 (2021).

# BACKGROUND

## I. Factual Background and Procedural History

In July 2015, SCMS, a Chilean company, entered a contract with the Chilean branch of Astaldi, an Italian construction company ("Astaldi Chile"), for the construction of a hospital in Chile. A18 ¶ 3. In 2018, a dispute over construction delays arose between SCMS and Astaldi Chile. A555-56 ¶¶ 5-7; A24-25 ¶¶ 21-25. The ensuing Chilean arbitration between those two parties resulted, in December 2021, in the Award in favor of SCMS and against Astaldi Chile. A556 ¶ 8; A17 ¶ 1; A25-27 ¶¶ 26-28.

Meanwhile, in September 2018, Astaldi initiated a court-supervised, Chapter-11-style insolvency and restructuring proceeding in Italy known as the "*Concordato.*" A368 ¶ 5; A373 ¶¶ 14-15. Astaldi's *Concordato* was among the largest and most complex in Italian history. A369 ¶ 7. Astaldi's court-approved *Concordato* plan (the "*Concordato* Plan") designated certain of Astaldi's assets as "Earmarked Assets" for sale to satisfy Astaldi's unsecured creditors. A369-70 ¶ 8. The *Concordato* Plan further provided for the continuation of Astaldi's ongoing business activity (the "Continuing Business"). *Id.* Consistent with the *Concordato,* pursuant to a July 2021 agreement between Webuild and Astaldi (the "Italian Transaction"), Astaldi's Continuing Business—but not the Earmarked Assets— were spun off into Webuild. A374 ¶¶ 17-18; A375-76 ¶ 22.

The merits dispute between SCMS and Webuild hinges on whether Webuild, as a result of the Italian Transaction, assumed liability for the Award. SCMS claims it did; Webuild maintains it did not. In October 2023, SCMS commenced enforcement proceedings in the District Court, alleging that Webuild, "pursuant to the [Italian Transaction] and Italian law," is liable for the Award as "Astaldi's successor-in-interest." A37 ¶ 59. On that claimed basis, SCMS seeks a judgment against Webuild for nearly $140 million, plus interest. A39.[3]

SCMS alleged the District Court had personal jurisdiction solely based on Webuild's ownership of shares in a Delaware holding company that has no connection with the Italian Transaction or the underlying dispute between SCMS and Astaldi. A23 ¶ 17. The District Court dismissed SCMS's claims, holding that, under *Shaffer*, those shares did not "provide contacts with Delaware sufficient to support the jurisdiction of [Delaware's] courts" because the property was "not the

---

[3]  SCMS also commenced parallel proceedings against Webuild in Ontario and Québec, Canada, and later in Connecticut. A377 ¶ 27. The Connecticut and Ontario proceedings were dismissed on *forum non conveniens* grounds, and the Québec proceeding has been stayed. *See Sociedad Concesionaria Metropolitana Du Salud S.A. v. Webuild S.P.A.*, No. 3:24-CV-02043 (SVN), 2026 WL 84524 (D. Conn. Jan. 12, 2026); *Sociedad Concesionaria Metropolitana de Salud S.A. v. Webuild S.p.A.,* 2026 ONCA 28. For its part, Webuild has commenced proceedings in Italy seeking a declaratory judgment that, under Italian law, (i) liability for the Award was not transferred to Webuild in the Italian Transaction; and (ii) the Award is not enforceable against Webuild. A677 ¶ 7; A682-A688.

subject matter of th[e] litigation, nor is the underlying cause of action related to the property." A7-8.

## II. The Panel's Decision

On May 18, 2026, a panel of this Court vacated the District Court's dismissal and remanded with instructions for that court to determine whether Webuild is Astaldi's successor in interest, and to conduct any other proceedings consistent with the opinion. Opinion at 34.

Deciding a question of first impression in this Circuit, the panel held that *Shaffer* "authorizes the exercise of traditional *quasi in rem* jurisdiction"—that is, property-based jurisdiction regardless of minimum contacts—"in an action to collect on an already adjudicated liability." Opinion at 3. Moreover, the panel held that this principle applies not only to sister-state judgments but also extends to foreign judgments and arbitral awards. Opinion at 26-31.

The panel further held that the District Court "has the power and the obligation" to determine, as part of its jurisdictional inquiry, whether Webuild assumed liability for the Award—"regardless of how complex" that question may be. Opinion at 32. The panel reasoned that this case falls within *Shaffer's* footnote 36 because, "[i]f the District Court determines that Webuild is Astaldi's successor in interest, then a 'court of competent jurisdiction' will have determined that 'the

7

defendant is a debtor of the plaintiff.'" *Id*. at 31-32 (quoting *Shaffer*, 433 U.S. at 210 n.36).

Having determined that *Shaffer* "does not preclude the District Court from determining whether Webuild is Astaldi's successor in interest (and thus, the arbitral award debtor)" (Opinion at 31), the panel, in two declarative sentences in a single paragraph near the end of its decision, also announced sweeping changes to the law of successor jurisdiction in this Circuit. First, the panel held, "[s]uccessor jurisdiction applies in all jurisdictional contexts, including to a case where jurisdiction depends on minimum contacts and a case (like this one) where minimum contacts are not required." Opinion at 32. And, second, the panel found, a court "may exercise personal jurisdiction over a successor in interest even if it would have lacked personal jurisdiction over the predecessor." *Id*. at 33.

## REASONS FOR GRANTING REHEARING

I.  **The Panel Decision Deepens a Circuit Split Over Whether Minimum Contacts are Required to Enforce a Foreign Arbitral Award**

The panel decision warrants review because it exacerbates an existing circuit split over whether minimum contacts are required to enforce a foreign arbitral award in the United States. As a leading international arbitration scholar has observed, "[c]ircuit courts have adopted inconsistent positions on the need for minimum contacts" in actions to enforce foreign arbitral awards against foreign award debtors.

Brief of *Amicus Curiae* Professor George A. Bermann in Support of Petitioners, *CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, Nos. 23-1201, 24-17 (U.S. Dec. 11, 2024), 2024 WL 5119390, at *21. The Fourth Circuit has squarely held that, under *Shaffer*, "the minimum contacts standard in *International Shoe* governs" whether a court properly may exercise *quasi in rem* jurisdiction in an award enforcement action. *Base Metal*, 283 F.3d at 213. In the Fourth Circuit's analysis, *Shaffer* thus forbids the exercise of jurisdiction based solely on an award debtor's ownership of in-state property that "bears no relationship to the arbitration award [the creditor] seeks to confirm." *Id*. at 214. On the other hand, the Ninth and Second Circuits have held that a foreign arbitration award may be enforceable "against property in [the forum state] owned by a *named respondent* in that arbitration." *Cerner Middle E. Ltd. v. iCapital, LLC,* 939 F.3d 1016, 1019 (9th Cir. 2019) (emphasis added); *accord Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 398 (2d Cir. 2009) (holding that the district court properly "treat[ed] jurisdiction over either [the named award debtor] or [its] property as a prerequisite to the enforcement" of a foreign arbitral award).[4]

---

[4] Even then, the Ninth Circuit in *Cerner* held that, where the named award debtor challenged the arbitration panel's jurisdiction over him, "the elements of *quasi in rem* jurisdiction" were satisfied only after a French court "with jurisdiction over [the debtor] confirmed the arbitration panel's conclusion that [the debtor] was subject to the panel's jurisdiction." *Cerner,* 939 F.3d at 1020.

The District Court's dismissal of this case was proper under either of those existing tests: in the Fourth Circuit's analysis, because Webuild's lack of minimum contacts with Delaware is undisputed, and under the Ninth and Second Circuits' approach, because Webuild was not a party to the arbitration between SCMS and Astaldi Chile. But the panel adopted neither existing standard. Instead, it established a novel and far broader rule, holding that *Shaffer* "does not preclude [an enforcing court] from determining whether" a *non-party* to a foreign arbitration is liable for the resulting award. Opinion at 31. Contrary to the panel's stated assumption, it did not "join several other courts" in adopting this sweeping new rule. Opinion at 30. The panel decision stands alone. It deepens an existing binary divergence into a three-way circuit split, and it does so without even acknowledging the inconsistency. This presents a paradigmatic question for *en banc* review under Fed. R. App. P. 40(b)(2)(C).

## II.    The Panel Decision Squarely Conflicts with *Shaffer*

The panel decision's conclusion that Webuild's mere ownership of shares in a Delaware corporation, standing alone, empowers the District Court to "determin[e] whether Webuild assumed Astaldi's obligation under the [A]ward" (Opinion at 31) squarely conflicts with *Shaffer*'s core holding that a court's assertion of *quasi in rem* jurisdiction "must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Shaffer*, 433 U.S. at 212. What "*Shaffer* was saying," in

10

other words, is that "*quasi in rem* jurisdiction . . . and *in personam* jurisdiction, are really one and the same and must be treated alike." *Burnham v. Superior Ct. of Cal.,* 495 U.S. 604, 621 (1990) (plurality). The panel decision acknowledges *Shaffer*'s "seemingly broad and unequivocal language" (Opinion at 15), but it then fashions a new and far-reaching exception no other court has endorsed.

The panel decision identifies *Shaffer's* footnote 36 as the source of this novel exception. In the panel's reading, footnote 36 "acknowledged" a "less stringent" due process standard for any "action to collect an already rendered judgment" (Opinion at 17) *from anyone*—not just the judgment debtor, but any third party the judgment creditor *claims* is liable for the judgment. The panel's extrapolation is irredeemably at odds with what the footnote actually says and contravenes bedrock due process principles. The *Shaffer* footnote discerned "no unfairness" in allowing a creditor-plaintiff to enforce its judgment against a defendant's property where "a court of competent jurisdiction" has "*determined ... that the defendant is a debtor* of the plaintiff." *Id*. (quoting *Shaffer*, 433 U.S. at 210 n.36) (emphasis added). But the panel decision reads the critical limitation those italicized words impose out of the footnote. To illustrate: if Anna obtains a judgment against Paul from "a court of competent jurisdiction," the *Shaffer* footnote arguably suggests she may seek to enforce her judgment against Paul's property anywhere in the country, even in states where Paul lacks minimum contacts. It does not, however, suggest Anna may bring

11

her judgment to a state where Paul's friend Jimmy owns property and (absent minimum contacts) execute against Jimmy's property merely because she *alleges* Jimmy assumed Paul's judgment debt.

This distinction is fundamental. The personal jurisdiction requirement "flows … from the Due Process Clause" and "protects an *individual* liberty interest." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (emphasis added). Hence, the "minimum contacts" requirement, which seeks to "protect the liberty of the nonresident defendant," is inherently "defendant-focused." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). On that basis, the *Shaffer* footnote, in the panel decision's words, suggests that "if the rendering court in one state properly exercised personal jurisdiction *over the defendant*, a court in a sister state may exercise traditional attachment jurisdiction to enforce the judgment." Opinion, at 17 (emphasis added). But a litigant does not "surrender [its] right to be brought to judgment only in States with which [it has] 'minimum contacts'" merely because the plaintiff previously obtained a judgment against a *different* party. *Shaffer*, 433 U.S. at 216. And, as this Court has held, "the Due Process constraints in asserting jurisdiction over a nonresident alien" are "not diminish[ed]" in an action to enforce a foreign arbitral award. *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 179 (3d Cir. 2006). Absent minimum contacts, an enforcing court is not a "court of competent jurisdiction" with the power to adjudicate, in the first instance, whether

12

"the defendant is a debtor of the plaintiff." *Shaffer*, 433 U.S. at 210 n.36. The panel decision's contrary holding unequivocally conflicts with *Shaffer*.

**III. The Panel Decision Departs from a Prior Panel Decision Authorizing Successor Jurisdiction Only Where a Plaintiff Seeks to Impute a Predecessor Corporation's Forum Contacts to an Alleged Successor**

The 34-page panel decision devotes a single paragraph to the crucial question of how exactly a hypothetical determination by the District Court that Webuild is Astaldi's successor in interest could confer property-based jurisdiction in this case. Yet, in that solitary paragraph, the panel announces a sweeping and seemingly limitless expansion of what it terms "successor jurisdiction," which, if the decision stands, will extend this previously limited doctrine to cases where both the predecessor and its alleged successor lack minimum contacts with the forum. Opinion at 32.

The panel decision's wholesale redefinition of "successor jurisdiction" starkly departs from the well-established meaning of the term in this Circuit. More than two decades ago, another panel of this Court held that the "concept" of "successor jurisdiction" applies where the "combin[ation]" of two corporations "render[s] a 'successor in interest' to a prior corporation subject to personal jurisdiction under [a state's long-arm statute] based on the predecessor's actions" in the forum state. *Nazi Era Cases*, 153 F. App'x at 822 (applying New York law). While successor jurisdiction may allow "the jurisdictional contacts of a predecessor corporation [to]

13

be imputed to its successor corporation without offending due process," the panel explained, "due process must be assessed for each [alleged successor] individually." *Id*. at 825 (citation omitted).

While the *Nazi Era Cases* decision was non-precedential, courts have widely cited it for the proposition that "the Third Circuit *only* recognizes successor jurisdiction where a plaintiff can establish … that the predecessor maintained significant, relevant contacts in the forum state that can justly be attached to the successor organization." *Black Ship, LLC v. Heartland Payment Sys., LLC*, No. CV 21-13855 (ZNQ) (DEA), 2023 WL 3585329, at *9 (D.N.J. May 22, 2023) (emphasis added), *vacated and remanded on other grounds*, No. 23-1997, 2024 WL 4210519 (3d Cir. Sep. 17, 2024); *accord, e.g., Walker v. Highmark BCBSD Health Options, Inc.*, No. 2:20-CV-01975-CCW, 2022 WL 1912922, at *3 (W.D. Pa. Jun. 3, 2022) ("Under the theory of 'successor jurisdiction,' 'the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process.'") (quoting *Nazi Era Cases*, 153 F. App'x at 822, 825)).[5]

---

[5] Decisions in this Circuit restating this rule are legion. *See New Jersey Dep't of Env't Prot. v. E.I. du Pont de Nemours & Co.*, No. CV 19-14758, 2021 WL 6064842, at *5 (D.N.J. Dec. 20, 2021); *Occidental Chem. Corp. v. 21st Century Fox Am.*, No. CV 18-11273, 2020 WL 13890453, at *3 (D.N.J. July 10, 2020); *Penco Prods., Inc. v. WEC Mfg., LLC*, 974 F. Supp. 2d 740, 746 n.29 (E.D. Pa. 2013); *Flagship Interval Owner's Ass'n, Inc. v. Phil. Furniture Mfg. Co.*, No. CIV09-1173 JBS/JS, 2010 WL 1135736, at *6 (D.N.J. Mar. 22, 2010); *Air Sea Int'l Forwarding, Inc. v. Glob. Imports & Trading, Inc.*, No.

Even outside this Circuit, the panel decision's redefinition of "successor jurisdiction" is without precedent. The only case it cites that involved *quasi in rem* jurisdiction over property not owned by a named judgment or award debtor is *Bunge S.A. v. Pacific Gulf Shipping (Singapore) Pte. Ltd.*, No. 3:19-CV-00491-SB, 2020 WL 1528250 (D. Or. Mar. 31, 2020). But *Bunge* was not a successor jurisdiction case at all. Instead, the issue there was whether the court could enforce a foreign arbitral award against a debt owed to the award debtor's alleged alter ego. And even as to that issue, the *Bunge* court erred because it failed to consider "whether it had jurisdiction to make the alter ego finding." *Gov't of the Lao People's Democratic Republic v. Baldwin*, No. 2:20-CV-00195-CRK, 2021 WL 5435114, at *8 (D. Idaho Nov. 19, 2021). But the *Baldwin* court did consider that question, and it ruled that, under *Shaffer*, the mere presence of property belonging to an alleged alter ego of the named award debtor, without more, could not confer jurisdiction. *Id*. at *8-9. Finally, the panel's holding that a court "may exercise personal jurisdiction over a successor in interest even if it would have lacked personal jurisdiction over the predecessor" is likewise unprecedented. Opinion at 33. The cases cited by the panel are inapposite because the defendants there independently *consented* to general

---

CV 03-268(PGS), 2008 WL 11510000, at *4 (D.N.J. Apr. 18, 2008), *report and recommendation adopted*, No. 03-CV-268 (PGS), 2008 WL 11509999 (D.N.J. Jun. 3, 2008); *Am. Ests. Wines, Inc. v. Kreglinger Wine Ests. Pty, Ltd.*, No. CIV.A.07-2474(JAG), 2008 WL 819993, at *5 (D.N.J. Mar. 25, 2008).

jurisdiction in the forum state.  *See Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp.

3d 278, 301 (M.D. Pa. 2018) (personal jurisdiction exists "where a successor

corporation that consented to general jurisdiction in a state [is] sued for the liabilities

of its predecessor in that state") (citing *In re DES Cases*, 789 F. Supp. 552, 591

(E.D.N.Y. 1992)).

## **CONCLUSION**

For the reasons set forth herein, the Court should grant the petition for

rehearing.

June 11, 2026                                    Respectfully Submitted,

                                                  /s/ Andreas A. Frischknecht
                                                 James M. Hosking
                                                 Andreas A. Frischknecht

                                                 CHAFFETZ LINDSEY LLP
                                                 1700 Broadway, 33rd Floor
                                                 New York, NY 10019
                                                 (212) 257-6960

                                                 – and –

                                                 Henry E. Gallagher, Jr.
                                                 Alan R. Silverstein

                                                 CONNOLLY GALLAGHER LLP
                                                 1201 North Market Street, 20th Floor
                                                 Wilmington, Delaware 19801
                                                 (302) 757-7300

                                                 *Attorneys for Respondent-Appellee*
                                                 *Webuild S.p.A.*

16

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.


June 11, 2026

<u>/s/ Andreas A. Frischknecht</u>
Andreas A. Frischknecht
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
(212) 257-6960

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,839 words (as determined by Microsoft Word for Office 365), excluding the parts of the petition exempted by Rule 32(f). This petition also complies with the typeface and type-style requirements of Rules 32(a)(5) and 32(a)(6) because it has been prepared in 14-Point Times New Roman proportional font using Microsoft Word for Office 365.

2.      Pursuant to Court's Rule 31.1(c), the foregoing brief has been scanned with version 24.1.5.277 of SentinelOne and is free of viruses.


June 11, 2026

/s/ Andreas A. Frischknecht
Andreas A. Frischknecht
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
(212) 257-6960

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2026, I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the Court's CM/ECF system. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

June 11, 2026

/s/ Andreas A. Frischknecht
Andreas A. Frischknecht
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
(212) 257-6960

# ANNEX I

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 24-3005

———

SOCIEDAD CONCESIONARIA METROPOLITANA DE
SALUD S.A.,
Appellant

v.

WEBUILD S.P.A

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1:23-cv-01175)
Chief District Judge: Honorable Colm F. Connolly

———

Argued October 1, 2025
Before: SHWARTZ, MATEY, and FISHER, *Circuit Judges*.

(Filed: May 18, 2026)

Miguel A. Estrada   **ARGUED**
Gibson Dunn & Crutcher
1700 M Street NW
Suite 900

Washington, DC 20036

Alexandra Ewing
Travis S. Hunter
Richards Layton & Finger
920 N King Street
One Rodney Square
Wilmington, DE 19801

Rahim Moloo
Jason W. Myatt
Gibson Dunn & Crutcher
200 Park Avenue
47th Floor
New York, NY 10166
        *Counsel for Appellant*

Joshua D. Anders
Andreas A. Frischknecht   **ARGUED**
James M. Hosking
Chaffetz Lindsey
1700 Broadway, 33rd Floor
New York, NY 10019

Henry E. Gallagher, Jr.
Alan R. Silverstein
Connolly Gallagher
1201 N Market Street, 20th Floor
Wilmington, DE 19801
        *Counsel for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

In this action brought to confirm, recognize, and enforce a foreign arbitral award, Sociedad Concesionaria Metropolitana de Salud S.A. ("SCMS") attempts to invoke *quasi in rem* jurisdiction over property that belongs to an arbitral-award debtor's alleged successor in interest. Finding insufficient contacts between the forum, the successor in interest, and the underlying controversy, the District Court found no basis to exercise personal jurisdiction[1] and dismissed SCMS's petition. SCMS appeals. Because we agree with SCMS that *Shaffer v. Heitner*, 433 U.S. 186, 210 n.36 (1977), authorizes the exercise of traditional *quasi in rem* jurisdiction in an action to collect on an already adjudicated liability, we will vacate and remand.

I.

A.

In 2014, the Chilean Ministry of Public Works awarded a contract to Astaldi Concessioni S.R.L. to design, construct, and operate a new hospital project in Santiago, Chile. Later that year, Astaldi Concessioni S.R.L. assigned the contract to

———

[1] In the modern context, "[j]urisdiction *in personam*, *in rem*, and *quasi in rem*" are all understood as "forms of personal jurisdiction." Restatement (Fourth) of the Foreign Relations Law of the United States § 422 cmt. a (Am. Law Inst. 2018). We follow the modern convention and, where necessary, refer specifically to each historically distinct form.

SCMS, a stand-alone Chilean company. In turn, SCMS contracted with Astaldi Sucursal Chile, the Chilean branch of Astaldi, S.p.A., an Italian company (together, "Astaldi"), who assumed SCMS's design and construction obligations. SCMS and Astaldi agreed to resolve any dispute in an arbitration proceeding before the Santiago Center for Arbitration and Mediation.

In September 2018, while the hospital project was under construction, Astaldi commenced in Italy a "*Concordato*" proceeding—a restructuring process akin to a proceeding commenced under Chapter 11 of the United States Bankruptcy Code—that restricted Astaldi's paying of certain debts. SCMS determined that Astaldi could not timely complete the project, and in January 2019, SCMS terminated the contract. An arbitration ensued in Chile, which resulted in an award in favor of SCMS and against Astaldi.

During the arbitration proceeding, Astaldi completed the restructuring process by "spinning off" its operating business and merging into Webuild S.p.A., an Italian multinational construction company. Under the proposed "spin-off" transaction: (1) Astaldi would continue certain business activities, including construction and infrastructure projects; (2) Astaldi would liquidate some assets and issue new shares to satisfy unsecured creditors; and (3) Webuild would infuse 225 million Euros of capital to compensate Astaldi's preferential creditors in exchange for majority control and ownership of Astaldi. A majority of Astaldi's creditors approved the proposal, and an Italian court approved the restructuring plan in July 2020. On August 1, 2021, Webuild acquired the majority of Astaldi's business (namely, the "building, infrastructure construction, . . . the study, design, transportation, maintenance, facility management and operation of complex systems"), App. 291, which purportedly

included the "assets and liabilities" of several projects, including the Santiago hospital project, App. 284.

Under this agreement, "Astaldi's business" would "continue as a going concern," while "integrate[d] . . . within Webuild," App. 279, and Astaldi's "remaining assets" would "continue their activities . . . for the exclusive benefit of" Astaldi's shareholders, App. 802. In other words, Astaldi, which is presently known as Astaris S.p.A., intended to liquidate and "wind down" each asset that was not acquired by Webuild.

In January 2022, Astaldi petitioned the Chilean Court of Appeals to set aside or modify the arbitral award. Finding that the arbitrator failed to apply a limitation of liability provision in the contract between SCMS and Astaldi, the Chilean Court of Appeals reduced the amount of damages but otherwise affirmed Astaldi's obligations under the award. Astaldi appealed to the Chilean Supreme Court, which held that the Chilean Court of Appeals' decision was not subject to challenge and that Astaldi's appeal is "inadmissible." App. 205.

In the United States District Court for the District of Delaware, SCMS brought this action against Webuild to confirm, recognize, and enforce the final arbitral award under 9 U.S.C. § 207, the Federal Arbitration Act ("FAA"), which implements in the United States the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 ("New York Convention"). Trying to collect the arbitral award and alleging that Webuild is Astaldi's successor in interest, SCMS attempted to invoke the District Court's *quasi in rem* jurisdiction over Webuild's shares in Webuild US Holdings, Inc., a Delaware-based and wholly owned subsidiary of Webuild.

Webuild moved to dismiss SCMS's petition for lack of

5

personal jurisdiction. Specifically, Webuild argued that *Shaffer* extends the minimum-contacts test of *International Shoe Co. v. Washington*, 326 U.S. 310, 322 (1945), to *quasi in rem* actions and that SCMS failed to establish minimum contacts between Delaware, the underlying breach-of-contract action, and Webuild US—who was a party to neither the arbitration nor the underlying contract. In response, SCMS argued that *Shaffer*'s thirty-sixth footnote expressly permits a court's exercising *quasi in rem* jurisdiction in an action to collect on an already adjudicated liability. *Shaffer*'s thirty-sixth footnote states:

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

*Shaffer*, 433 U.S. at 210 n.36.

Finding no basis for personal jurisdiction, the District Court granted Webuild's motion and dismissed SCMS's petition. *Sociedad Concesionaria Metropolitana de Salud S.A. v. Webuild S.p.A*, No. CV 23-1175-CFC, 2024 WL 4333144, at *2 (D. Del. Sept. 27, 2024). First, the District Court held that *Shaffer* and its progeny categorically "preclude[] a court from exercising jurisdiction over a nonresident defendant based solely on the presence of property in the court's state that is unrelated to the action." *Id*. Finding that SCMS failed to allege a relation between Webuild US and the Chilean arbitration, the District Court found insufficient contacts to support the exercise of *quasi in rem* jurisdiction. *Id*. at *1–2. Second, the

6

District Court alternatively held that, even if SCMS's interpretation of *Shaffer's* thirty-sixth footnote is correct, the "exception" to *Shaffer's* general rule does not apply to this action because SCMS did not ask the District Court to recognize a court of competent jurisdiction's determination that Webuild (as opposed to Astaldi) is SCMS's debtor. *Id*. at *2. SCMS appeals each holding.

## II.

The District Court exercised subject matter jurisdiction under 9 U.S.C. § 203 and under 28 U.S.C. § 1331. We exercise subject matter jurisdiction under 28 U.S.C. § 1291. "We review the District Court's dismissal for lack of personal jurisdiction de novo." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). Because the District Court did not conduct an evidentiary hearing, SCMS's jurisdictional facts are accepted as true, and SCMS "need only establish a *prima facie* case of personal jurisdiction." *See, e.g. Metcalf v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation marks omitted).

## III.

On appeal, SCMS challenges the District Court's primary and alternative holdings. With respect to the primary holding—that no basis for personal jurisdiction exists—SCMS contends that, under *Shaffer*'s thirty-sixth footnote, no minimum contacts are required for a court to exercise *quasi in rem* jurisdiction in an action to collect on an already

7

adjudicated debt.[2] Therefore, the question is whether, in an action to collect on an already adjudicated debt, the mere presence of a debtor's property within a forum state establishes a constitutional basis for which to exercise *quasi in rem* jurisdiction.

A.

Personal jurisdiction is a court's authority to assert coercive power over a defendant. Historically, personal jurisdiction fell into one of three categories: one directs power over persons—*in personam* jurisdiction—and the other two direct power over interests in specific property—*in rem* and *quasi in rem* jurisdiction. *Shaffer*, 433 U.S. at 199; *see also Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958). Each of these characterizations is a vestige of a time in which personal jurisdiction depended on territorial power: if a defendant's person or property was located within a state's geographic boundaries, a state court could exercise jurisdiction. *Id.* ("[U]nder *Pennoyer*[,] state authority to adjudicate was based on the jurisdiction's power over either persons or property."); *Pennoyer v. Neff*, 95 U.S. 714, 722 (1877) (explaining that personal jurisdiction rests on two "principles of public law": (1) "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory," and (2) "no State can exercise direct jurisdiction and authority over persons or property without its territory," *i.e.*, "no tribunal established by [a state] can extend its process beyond that

---

[2] In the alternative, SCMS contends that, even if *Shaffer* requires minimum contacts, the District Court misapplied the test. Because we agree with SCMS that *Shaffer*'s thirty-sixth footnote permits the exercise of *quasi in rem* jurisdiction to confirm and enforce a foreign arbitral award, we do not address SCMS's alternative argument.

territory so as to subject either persons or property to its decisions").

Each of the three categories describes the way in which a court may affect the interests or rights of a defendant. For example, an *in personam* judgment "impose[s] a personal obligation on the defendant in favor of the plaintiff." *Shaffer*, 433 U.S. at 199. On the other hand, the effect of an *in rem* or *quasi in rem* judgment is "limited to the property that supports jurisdiction and does not impose a personal liability on the property owner, since he is not before the court." *Id*. Accordingly, a defendant's liability and a plaintiff's possibility of recovery are greater if a court exercises *in personam* jurisdiction over a defendant.[3]

---

[3] Modern-day personal jurisdiction is largely occupied by the principles of specific and general jurisdiction, which define the type of causes of action for which a particular defendant is liable. Specific jurisdiction permits a state court to adjudicate specific claims against a defendant. If the defendant "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), the State's courts may adjudicate claims that "'arise out of or relate to the defendant's contacts' with the forum," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (emphasis omitted) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)).

Also, an *in personam* judgment provides a winning party with the possibility of interstate enforcement. An *in personam* judgment rendered in any state of the United States is entitled to full faith and credit in the courts of every sister state.[4] As the Supreme Court explained, "a debtor can[not] avoid paying his obligations by removing his property to a State in which his creditor cannot obtain personal jurisdiction over him. The Full Faith and Credit Clause, after all, makes the valid in personam judgment of one State enforceable in other States." *Shaffer*, 433 U.S. at 210.

*Quasi in rem* jurisdiction comes in two types. Type I is used to determine the ownership of disputed property between two or more defined parties. Restatement (Second) of Judgments § 6 cmt. a (Am. Law Inst. 1982). *Quasi in rem*

---

General jurisdiction, by contrast, allows a state court to adjudicate "'any and all claims' brought against a defendant." *Ford Motor*, 592 U.S. at 358 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). This sweeping authority exists only when the defendant is "at home" in the State. *Ford Motor*, 592 U.S. at 358 (quoting *Goodyear*, 564 U.S. at 919). An individual is usually "at home" in his domicile, *Goodyear*, 564 U.S. at 924, and a corporation is usually "at home" in both its place of incorporation and principal place of business, *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Absent an exceptional circumstance, general jurisdiction is limited to these locations. *Id*. at 139 n.19.

[4] Under the Full Faith and Credit Clause, U.S. Const. Art. IV., § 1, and its implementing statute, 28 U.S.C. § 1738, "that which has been adjudicated in one state [is] res judicata to the same extent in every other." *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1184 (3d Cir. 1972) (citations omitted).

type I is most often used in "actions to partition land, quiet title, or foreclose mortgages." Linda J. Silberman, *Shaffer v. Heitner: The End of an Era*, 53 N.Y.U. L. Rev. 33, 39 (1978). Also, *Quasi in rem* type I is distinct from *in rem* jurisdiction because *in rem* jurisdiction determines ownership of property as against the entire world, but a *quasi in rem* judgment applies only to defined parties. *Shaffer*, 433 U.S. at 199 n.17 (citations omitted). *Quasi in rem* type II, the form of jurisdiction SCMS attempts to invoke here, involves the use of property not to determine ownership but to serve as the basis for litigation of some other dispute between the parties. Silberman, 53 N.Y.U. L. Rev. at 39; Restatement (Second) of Judgments § 8(1)(d) (Am. Law Inst. 1982). Under type II, the plaintiff concedes the defendant's ownership of the attached property and uses that ownership as the basis for invoking jurisdiction. *Shaffer*, 433 U.S. at 199 n.17 (citations omitted).

In practice, *quasi in rem* jurisdiction type II, more commonly known as attachment jurisdiction, greatly expanded the reach of personal jurisdiction. Under this category, a court can exercise jurisdiction over a designated property and can render a judgment that affects only those interests of particular individuals in that property. *Id*. As relevant here, attachment jurisdiction is invoked to collect from the owner of the property a debt based on a judgment rendered in a forum where that owner was subject to personal jurisdiction. *Id*.; *see also CME Media Enters. B.V. v. Zelenzy*, No. 01 Civ. 1733 (DC), 2001 WL 1035138, at *3 (S.D.N.Y. Sept. 10, 2001) ("[Q]uasi in rem jurisdiction is used to attach property to collect a debt based on a claim already adjudicated in a forum where there was personal jurisdiction over the defendant."). However, unlike an *in personam* judgment, "[t]he effect of a judgment in [an attachment jurisdiction] case is limited to the property that supports jurisdiction[;] . . . [the judgment] does not impose a

personal liability on the property owner, since he is not before the court." *Shaffer*, 433 U.S at 199.

Thus, historically, *quasi in rem* jurisdiction served both as a practical complement to *in personam* judgments and as a substitute for *in personam* jurisdiction. For most of our nation's history, attachment jurisdiction allowed a creditor to adjudicate a claim against a fleeing debtor by attaching the property the debtor left behind. Michael B. Mushlin, *The New Quasi in Rem Jurisdiction: New York's Revival of a Doctrine Whose Time Has Passed*, 55 Brook. L. Rev. 1059, 1066–67 (1990). Attachment jurisdiction provided to a creditor both a forum in which to adjudicate his claims against a debtor and a means with which to satisfy any resulting judgment. *Id*. For a time, attachment jurisdiction was considered "indispensable." Robert Wyness Millar, Civil Procedure Of The Trial Court In Historical Perspective 481 (1952).[5] Considering that "huge sections of the continent were underdeveloped, and transportation and communication among its far flung parts remained primitive," without attachment jurisdiction, a creditor would rarely have occasion to collect on a fleeing debtor's debt. Mushlin, 55. Brook. L. Rev. at 1067.

---

[5] Professor Millar noted that, prior to *Shaffer*, attachment jurisdiction "blossomed and flourished, to become an almost indispensable constituent of our procedural systems." *Id*. *See also* Charles D. Drake, A Treatise On The Law of Suits By Attachment In The United States 37 (7th ed. 1891) (quoting *Pyrolusite M. Co. v. Ward*, 73 Ga. 481, 492 (1884), for the proposition that "[n]o one ever dreamed that the attachment laws of the several States authorizing attachments against non-resident defendants, were violative of the Constitution of the United States. Argument is unnecessary.").

B.

As technology advanced and the New World became smaller, *Pennoyer*'s framework began to fade. In response to the ever-increasing situations where a defendant caused injury in a state where *in personam* jurisdiction was lacking under *Pennoyer*, the Court modified the territorial limits on jurisdiction. *See Shaffer*, 433 U.S. at 202 (discussing the evolution of personal jurisdiction under *Pennoyer*). Because these modifications produced inefficient processes that "absorbed much judicial energy," *id*., the Court drastically shifted the focus of *in personam* jurisdiction from a court's territorial power over a person to the person's contacts with the forum state, *Int'l Shoe Co.*, 326 U.S. 310 at 316 ("[D]ue process requires only . . . that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (internal citation and quotation marks omitted). With respect to *in personam* jurisdiction, *International Shoe* abandoned *Pennoyer*'s concern for states' mutually exclusive sovereignty and mandated an inquiry into "the relationship among the defendant, the forum, and the litigation." *Shaffer*, 433 U.S. at 204.

However, in the three decades after *International Shoe*, "[n]o equally dramatic change . . . occurred in the law governing jurisdiction *in rem* [or *quasi in rem*]." *Id*. at 205. Despite *International Shoe*'s abrogation of *Pennoyer* with respect to *in personam* jurisdiction, the traditional basis for *quasi in rem* jurisdiction, including attachment jurisdiction, persisted. Then came *Shaffer*. In that case, the Supreme Court extended *International Shoe* to all forms of personal jurisdiction, holding that an *in rem* action is consistent with the constitutional limits of due process only if the attached property is the subject of, or related to, the litigation. *Id*. at 212.

In *Shaffer*, Heitner, a shareholder of the Greyhound

Corporation, brought a derivative suit in Delaware against Shaffer and other members of the Greyhound board of directors. *Id.* at 189–90. According to Heitner, the board's unlawful actions subjected Greyhound to liability in a separate antitrust suit. *Id.* at 190. The alleged violations, however, occurred in Oregon, and none of the directors resided in Delaware. *Id*. 190–91. The directors were haled into Delaware court based on their ownership of stock and stock options that, according to Delaware law, were deemed present in Delaware. *Id.* at 191–94. But, as the Court noted, the "property [was] not the subject . . . of th[e] litigation, nor [was] the underlying cause of action related to the property." *Id*. at 213. Indeed, the property was "completely unrelated to [the] cause of action . . . . [T]he only role played by the property [was] to provide a basis for bringing the defendant into court." *Id*. at 209.

Concerned that the persistence of traditional *in rem* and *quasi in rem* jurisdiction undermined the theoretical basis of *International Shoe*, the *Shaffer* Court held: "if a direct assertion of personal jurisdiction over [a] defendant would violate the Constitution . . . an indirect assertion of that jurisdiction should be equally impermissible." *Id*. Heitner could not have brought in Delaware an *in personam* action against the defendants because the alleged conduct did not relate to Delaware or to the defendants' stock ownership. To permit the exercise of *quasi in rem* jurisdiction absent minimum contacts would circumvent the reasoning of *International Shoe*; as *Shaffer* observes, "[t]he phrase, 'judicial jurisdiction over a thing', is a[n] . . . elliptical way of referring to jurisdiction over the interest of persons in a thing." *Id*. at 207 (quoting Restatement (Second) of Conflict of Laws § 56, Introductory Note (1971)).

Thus, when "the basis for . . . jurisdiction is completely unrelated to the plaintiff's cause of action," the mere presence of property within a particular state does not, by itself, support

jurisdiction. *Id.* at 209. "The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe*." *Id*. at 207. Therefore, in the context of a plenary action, *Shaffer* unequivocally holds that "fair play and substantial justice" requires a sufficient relation between the property, the cause of action, and the forum. *Id.* at 211–12.

C.

Despite *Shaffer*'s seemingly broad and unequivocal language, SCMS contends that *Shaffer* merely "introduce[s] a narrow constitutional limit" on traditional *quasi in rem* jurisdiction. Appellant's Br. 21. SCMS argues that "*Shaffer* extended *International Shoe*'s minimum-contacts test to plenary actions that determine a defendant's initial liability . . . , but it left property-based jurisdiction in place for summary proceedings to enforce a previously adjudicated liability." *Id.* at 23. Specifically, SCMS identifies *Shaffer*'s thirty-sixth footnote as creating this exception. Webuild responds that *Shaffer* establishes "a categorical rule that a court's exercise of *quasi in rem* jurisdiction is governed by the same, well-established 'minimum contacts' standard as *in personam* jurisdiction." Appellee's Br. 16. As to *Shaffe*r's thirty-sixth footnote, Webuild argues that no "court of competent jurisdiction" has determined that Webuild is liable for Astaldi's debt to SCMS. Appellee's Br. at 16 (quoting *Shaffer*, 433 U.S. at 210 n.36).

Although this is a question of first impression in this

Court,[6] a few of our sister Circuits have considered the effect of *Shaffer*'s thirty-sixth footnote, albeit without much explanation. The Ninth Circuit has invoked the footnote's reasoning and determined that a district court can exercise attachment jurisdiction in a post-judgment action without regard to minimum contacts. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002) (recognizing that "[c]onsiderable authority supports [the petitioner's] position that it can enforce the award against [the arbitral award debtor's] property in the forum even if the property has no relationship to the underlying controversy between parties"); *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010) ("In an action to execute on a judgment, due process concerns are satisfied, assuming proper notice, by the previous rendering of a judgment by a court of competent jurisdiction."); *Cerner Middle E. Ltd. v. iCapital, LLC*, 939 F.3d 1016, 1022 (9th Cir. 2019) (holding that a district court may exercise *quasi in rem* jurisdiction when "(1) a court of competent jurisdiction rendered a judgment against [the defendant], and (2) [the defendant] owns property in the forum state").

Similarly, the Second Circuit has endorsed the view that *Shaffer* permits a court to exercise attachment jurisdiction to confirm and enforce a foreign arbitral award. *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 398 (2d Cir. 2009) (holding that the district court did

---

[6] *See Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 47 F. App'x 73, 77–78 (3d Cir. 2002) (declining to decide whether the mere presence of an award debtor's property in a forum-state is "a sufficient and independent basis of jurisdiction" in "a proceeding to confirm and enforce a foreign arbitration award").

not err by requiring jurisdiction over the defendant's person or property to enforce a foreign arbitral award). We agree with our sister Circuits. As explained below, *Shaffer*'s text expressly contemplates the continued existence of attachment jurisdiction in a post-judgment setting and that logic extends beyond enforcing a sister state's judgment under full faith and credit to the enforcement of foreign judgments and foreign arbitral awards under the New York Convention.

First, *Shaffer* expressly acknowledged that the Due Process clause's fairness requirement is less stringent in an action to collect an already rendered judgment. *Shaffer*'s thirty-sixth footnote provides the Supreme Court's imprimatur of the practical relationship between *in personam* and attachment jurisdiction in post-judgment actions:

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

*Shaffer*, 433 U.S. at 210 n.36. Contemplating the enforcement of a sister state's judgment under the Full Faith and Credit Clause, *Shaffer*'s thirty-sixth footnote embraces a rear-view mirror approach to personal jurisdiction: if the rendering court in one state properly exercised personal jurisdiction over the defendant, a court in a sister state may exercise traditional attachment jurisdiction to enforce the judgment. *See Kulko v. Superior Court*, 436 U.S. 84, 95 (1978) (holding that, although California's assertion of personal jurisdiction over a New York resident was unreasonable, "a New York court would clearly

have personal jurisdiction over [the defendant] and, if a judgment were entered by a New York court . . . , it could properly be enforced against him in both New York and California"). Thus, even after *Shaffer*, attachment jurisdiction persists as a complement to the enforcement of an *in personam* judgment.

Resisting this conclusion, Webuild characterizes *Shaffer*'s thirty-sixth footnote as "classic dicta" and argues that neither this Court nor the Supreme Court has adopted SCMS's interpretation of *Shaffer*. Appellee's. Br. 29. To support its argument, Webuild invokes two cases—*Rush v. Savchuk*, 444 U.S. 320 (1980), and *Nehemiah v. Athletics Cong. of U.S.*, 765 F.2d 42 (3d Cir. 1985)—each of which the District Court cited below. Both are inapposite.

In *Rush*, the plaintiff brought a negligence action in Minnesota against a non-resident defendant who injured the plaintiff in an automobile accident that occurred in Indiana. 444 U.S. at 322. Although the defendant had no contact with Minnesota, the defendant's insurer conducted business in Minnesota. *Id*. The plaintiff attempted to invoke the Minnesota court's *quasi in rem* jurisdiction over the defendant by attaching the defendant's insurance provider's obligation to defend and indemnify the defendant. *Id*. Invoking *Shaffer*, *Rush* acknowledged that "the mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated action." *Id*. at 328. Because, among other reasons, the insurance policy was neither the subject matter of the cause of action nor related to the defendant's negligence, the *Rush* Court determined that no sufficient contacts existed between the litigation and the forum state. *Id*. at 329.

Like the District Court below, Webuild reads *Rush* to

affirm that *Shaffer* requires minimum contacts for all *quasi in rem* actions. But *Rush* merely interpreted *Shaffer* to say that a defendant's in-state property alone cannot "support the exercise of jurisdiction over an unrelated cause of action." *Id*. at 328. Rather unremarkably, *Rush* does nothing more than describe—and certainly does not expand—*Shaffer*'s basic premise: in a plenary action brought *quasi in rem* to adjudicate a liability unrelated to the in-forum property, minimum contacts are required. *Rush* does not mention, much less abrogate, *Shaffer*'s thirty-sixth footnote, which addresses the jurisdictional requirements in a post-judgment action.

Similarly, Webuild invokes *Nehemiah*, which holds that "the minimum contacts test [must] be used to evaluate the existence of all claims of *in rem* jurisdiction." 765 F.2d at 47. In that case, we held that *Shaffer*'s "sweeping language"—that "'*all* assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny,'" *id.* (quoting *Shaffer*, 433 U.S. at 212)—rendered unconstitutional the practice of so-called tag jurisdiction, which establishes jurisdiction over a non-resident defendant through in-state service, *id.* As SCMS notes, the Supreme Court abrogated our holding in *Nehemiah* and upheld the practice of tag jurisdiction. *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 615 (1990) (plurality); *see also Senju Pharm. Co., Ltd. v. Metrics, Inc.*, 96 F.Supp.3d 428, 439 (D.N.J. 2015) (recognizing that *Nehemiah* "was cited by the Supreme Court in *Burnham* as one of the few opinions that have 'erroneously' found the practice of in-state service of process unconstitutional." (quoting *Burnham*, 495 U.S. at 615)). Like *Rush*, *Nehemiah* did not involve an action brought to collect an already rendered judgment and did not discuss *Shaffer*'s thirty-sixth footnote.

In any event, the Supreme Court has cautioned litigants

19

and lower courts against "(mis)reading *Shaffer* as suggesting that *International Shoe* discarded every traditional method for securing personal jurisdiction that came before." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 141 (2023) (plurality) (upholding without regard to minimum contacts personal jurisdiction over a non-resident defendant corporation that consented to a state's general jurisdiction as a condition of conducting business within the state); *see also Burnham*, 495 U.S. at 622 (upholding without regard to minimum contacts tag jurisdiction). After all, the crux of both *International Shoe* and *Shaffer* is that due process requires compliance with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). And according to *Shaffer*'s thirty-sixth footnote, "there would seem to be *no unfairness* in allowing an action to realize on [an adjudicated] debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter." 433 U.S. at 210 n.36 (emphasis added).

*Shaffer* condemned "[t]he fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner." *Id*. at 212. In other words, *Shaffer* recognized that in a plenary action, "*quasi in rem* jurisdiction, that fictional 'ancient form,' and *in personam* jurisdiction, are really one and the same and must be treated alike." *Burnham*, 495 U.S. at 621 (discussing the holding of *Shaffer*). But that is only where *quasi in rem* jurisdiction is invoked as a substitute, "*i.e.*, [as] that form of *in personam* jurisdiction based upon a 'property ownership' contact." *Id*.

In a post-judgment action, attachment jurisdiction is invoked merely to enforce an already adjudicated debt. The exercise of this kind of jurisdiction, like the nature of the cause of action, is fundamentally different than the exercise of *in*

*personam* jurisdiction in a plenary action. *See Titus v. Wallick*, 306 U.S. 282, 291 (1939) (holding that, because the out-of-state judgment, rather than the underlying cause of action, is the basis on which the judgment is sought, "the constitutional mandate requires credit to be given to a money judgment rendered on a civil cause of action in another state, even though the forum would have been under no duty to entertain the suit on which the judgment was founded"). Because the underlying cause of action merges into a judgment, a new and limited cause of action to collect on the judgment is created. Consequently, no justification exists to impose *International Shoe*'s litigation-relatedness requirement on a post-judgment proceeding. *Shaffer*'s thirty-sixth footnote recognizes this commonsense exception and expressly preserves attachment jurisdiction in this limited circumstance.

Although attachment jurisdiction persists as a complement with which to enforce an *in personam* judgment, enforcing a judgment is not necessarily automatic. Under the Full Faith and Credit Clause, a court must recognize and enforce a sister state's judgment only if the sister state's court validly exercised personal jurisdiction over the parties. In other words, an *in personam* judgment rendered by a court that lacked personal jurisdiction is not entitled to another state's full faith and credit. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) ("A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." (citing *Pennoyer*, 95 U.S. at 732–33)). Otherwise, a valid *in personam* judgment rendered by a sister state is subject only to the

enforcing state's *bona fide* procedural rules.[7] *See Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 235 (1998) ("Full faith and credit, however, does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments.").

D.

The Full Faith and Credit Clause and its implementing statute do not apply to foreign judgments or to foreign arbitral awards. *Aetna Life Ins. Co. v. Tremblay*, 223 U.S. 185, 190 (1912) ("No such right, privilege, or immunity . . . is conferred by the Constitution or by any statute of the United States in respect to the judgments of foreign states or nations . . . ."); *McDonald v. City of West Branch*, 466 U.S. 284, 288 (1984) ("Arbitration is not a 'judicial proceeding' and, therefore, § 1738 does not apply to arbitration awards."). However, a similar mechanism exists for both foreign judgments and foreign arbitral awards. For example, a court will credit a

---

[7] Congress has provided for the interdistrict registration of federal-court judgments for recovery of money or property. 28 U.S.C. § 1963 (upon registration, the judgment "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner"). A similar interstate registration procedure has been adopted by most states as a result of the widespread adoption of the Uniform Enforcement of Foreign Judgments Act, 13 U.L.A. 149 (1964). Uniform Law Commission, *Enactment History*, Enforcement of Foreign Judgments Act, https://www.uniformlaws.org/committees/community-home?communitykey=e70884d0-db03-414d-b19a-f617bf3e25a3 [https://perma.cc/RN72-ZFDB] (last updated Mar. 27, 2026).

foreign judgment to the extent that recognition comports with judicial comity. *See Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895).[8]

More than a century ago, the Supreme Court recognized:

> [Once] there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting . . . or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not . . . be tried afresh . . . .

*Id*. Guided by this principle, state legislatures across the United States have enacted legislation to enable the recognition and

---

[8] The Supreme Court has said that comity determines "[t]he extent to which the law of one nation . . . shall be allowed to operate within the dominion of another nation." *Hilton v. Guyot*, 159 U.S. 113, 163 (1895).

enforcement of foreign judgments.[9] Although courts are "quite liberal in their recognition and enforcement of foreign judgments," Ronald A. Brand, *Recognition and Enforcement of Foreign Judgments* at 2 (Fed. Judicial Center April 2012),[10] a defendant may challenge the recognition and enforcement of a foreign judgment if the foreign court rendered the judgment under conditions that fail to satisfy basic requirements of due process, *see, e.g.*, Uniform Foreign Money-Judgments Recognition Act § 4(a)(1) (1962) (UFMJRA 1962); Uniform Foreign-Country Money Judgments Recognition Act § 4(b)(1) (2005) (UFMJRA 2005); Restatement (Third) Foreign Relations Law § 482(1)(a) (1986).

As with a judgment rendered by a sister state, if the rendering court lacked personal jurisdiction, the defendant may challenge the enforcement of the judgment in the enforcing court. UFMJRA 1962 § 4(a)(2); UFMJRA 2005 § 4(b)(2); Restatement (Third) Foreign Relations Law § 482(1)(b). In

---

[9] In 2005, the National Conference of Commissioners on Uniform State Laws completed the 2005 Uniform Foreign-Country Money Judgments Recognition Act, which is an updated version of the 1962 Uniform Foreign-Money Judgments Recognition Act. According to the Uniform Law Commission, thirty-nine jurisdictions have adopted at least one version. Uniform Law Commissioners, *Enactment History*, Uniform Foreign-Country Money Judgments Recognition Act, https://www.uniformlaws.org/committees/community-home?communitykey=ae280c30-094a-4d8f-b722-8dcd614a8f3e [https://perma.cc/82T6-4EVP] (last updated Mar. 27, 2026).

[10] Available at https://www.fjc.gov/sites/default/files/2012/BrandEnforce.pdf [https://perma.cc/PE58-HV75] (last visited Mar. 26, 2026).

other words, the enforcement of foreign judgments in the United States complies with the constitutional requirements of due process in the same way that domestic counterparts do. For that reason, other courts have not limited the logic of *Shaffer*'s thirty-sixth footnote to the enforcement of a sister state judgment under full faith and credit; if a foreign court properly exercised personal jurisdiction over a defendant, an enforcing court can exercise attachment jurisdiction over a defendant's assets to enforce a foreign judgment. *See, e.g.*, *Pure Fishing, Inc, v. Silver Star Co.*, 202 F. Supp. 2d 905, 912 & n.3 (N.D. Iowa 2002) (holding that a court may recognize and enforce a foreign judgment against a judgment-debtor's property located in the state in the same manner that it would a judgment of a sister state); *Electrolines, Inc. v. Prudential Assurance Co.*, 677 N.W.2d 874, 885 (Mich. App. 2003) (same).[11]

---

[11] Other jurisdictions have gone even further and held that neither minimum contacts nor the presence of in-forum assets is necessary for a court to confirm a foreign arbitral award. *Lenchyshyn v. Pelko Elec., Inc.*, 723 N.Y.S.2d 285, 286 (N.Y. App. Div. 2001) (holding that "the judgment debtor need not be subject to personal jurisdiction in New York" and that the Due Process Clause does not require "that the New York Court have a jurisdictional basis for proceeding against [the] judgment debtor"); *Haaksman v. Diamond Offshore (Bermuda), Ltd.*, 260 S.W.3d 476, 481 (Tex. App. 2008) (holding that "even if a judgment debtor does not currently have property in Texas, a judgment creditor should be allowed the opportunity to obtain recognition of his foreign-money judgment and later pursue enforcement if or when the judgment debtor appears to be maintaining assets in Texas").

This begs the question: why should a court treat the enforcement of foreign judgments differently than the confirmation and enforcement of foreign arbitral awards? We do not find a principled reason to do so. Both the logic and spirit of *Hilton* and *Shaffer*'s thirty-sixth footnote extend to the recognition and enforcement of a foreign arbitral award.[12]

First, the procedure to enforce a foreign arbitral award guarantees the protection of an award debtor's due process rights. Of course, as mentioned above, arbitral awards are not subject to the Full Faith and Credit Clause and its implementing statute, which apply only to "judicial proceedings." *See McDonald*, 466 U.S. at 287 (citation omitted). Because an "[a]rbitration is not a 'judicial proceeding' . . . [,] § 1738 does not apply to arbitration awards." *Id*. at 288. And unlike a foreign or domestic judgement, an arbitral award is not rendered by a judge.[13]

---

To the extent that these decisions hold that no jurisdiction whatever is required to enforce a foreign judgement (or arbitral award), they are constitutionally suspect, and we do not endorse them. Neither the New York Convention nor its implementing legislation removed the district courts' obligation to find personal jurisdiction over the defendant or its property in suits brought to confirm and enforce arbitral awards.

[12] Because the controversy before us concerns only a foreign arbitral award, nothing in this opinion should be construed as necessarily applying to the enforcement of a domestic arbitral award.

[13] The Supreme Court has recognized at least one difference between an arbitrator and a judge:

Notwithstanding this fact, arbitrators resolve disputes. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985) ("By agreeing to arbitrate a . . . claim, a party does not forgo . . . [its] substantive rights . . . ; it only submits to their resolution in an arbitral, rather than a judicial, forum."). An arbitration can provide just as fair a procedure as any judicial proceeding:

> [S]hort of authorizing trial by battle or ordeal or, more doubtfully, by panel of three monkeys, parties can stipulate to whatever procedures they want to govern the arbitration of their disputes; parties are as free to specify idiosyncratic terms of arbitration as they are to specify any other terms in their contract.

*Baravati v. Josephthal, Lyon & Ross, Inc*., 28 F.3d 704, 709 (7th Cir. 1994). If the parties agree to the terms of an arbitral clause, an arbitral award that results from arbitration is almost certainly fair.

This fairness is guaranteed by procedure. First, a party that agrees to arbitration consents to the jurisdiction of the arbitral tribunal and, to the extent that an arbitral award debtor

> [A]rbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases. . . . [W]e should . . . be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review.

*Commonwealth Coatings Corp. v. Cont'l Cas. Co*., 393 U.S. 145, 148–49 (1968).

resists recognition and enforcement to avoid confirmation, the debtor may furnish proof of one of the five affirmative defenses, including that the arbitration agreement is invalid "under the law of the country where the award was made."[14] New York Convention, art. V(1)(a). As when a defendant resists the enforcement of a foreign or domestic judgment, the New York Convention and its implementing legislation ensure that the arbitral award debtor's due process rights are protected.

Second, beyond adjudicating the narrow defenses described above, a court that confirms and enforces a foreign arbitral award has a very limited role. As with enforcement actions brought under the Full Faith and Credit Clause, petitions under the FAA to confirm foreign arbitral awards result in "summary proceedings that do not require [a] district court to carry on a formal judicial proceeding." *Jiangsu Beier Decoration Materials Co. v. Angle World LLC*, 52 F.4th 554, 560 (3d Cir. 2022) (internal citation omitted; alteration in original). And "[b]y [requiring only] a truncated summary proceeding, the FAA directs district courts to give their imprimatur to arbitration awards by converting them into enforceable judgments." *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 255 (3d Cir. 2020).

Only a summary proceeding is required because, like a judgment rendered by the court of a sister state, an unconfirmed arbitral award is the source of a new cause of action that is *res judicata*. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) (explaining that confirmation of an award is "a summary proceeding that merely makes what is

---

[14] A court may also reject a petition if recognition or enforcement of the award would be contrary to domestic public policy. New York Convention, art. V(2)(b).

already a final arbitration award a judgment of the court"); *Lynne Carol Fashions, Inc. v. Cranston Print Works, Co.*, 453 F.2d 1177, 1179 (3d Cir. 1972) ("[R]es judicata . . . operates to destroy causes of action by merger or bar"). This preclusive effect, although less forceful in this context, mirrors that of a domestic judgment and illustrates why attachment jurisdiction persists as a complement to, rather than a substitute for, *in personam* jurisdiction. And the fact that SCMS brings this proceeding to confirm and enforce a foreign arbitral award, rather than to adjudicate the underlying merits, "rightly colors our analysis." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 178 (3d Cir. 2006).

Finally, through the adoption and implementation of the New York Convention, Congress has unmistakably recognized an "emphatic federal policy in favor of arbitral dispute resolution" that applies "with special force in the field of international commerce" and that endorses "the efficacy of arbitral procedures for the resolution of international commercial disputes." *Mitsubishi Motors*, 473 U.S. at 631. Like the Full Faith and Credit Clause and its implementing statute that apply to the enforcement of a sister state judgment, and like the several state laws that apply to the enforcement of foreign judgments, the New York Convention imposes on United States courts an obligation to "recognize arbitral awards as binding and [to] enforce them." New York Convention, art. III; 9 U.S.C. § 201 (providing that foreign arbitral awards rendered under the New York Convention "shall be enforced in United States courts"). Congress has enacted for foreign arbitral awards an enforcement scheme that closely resembles the Full Faith and Credit Clause and to which the logic of *Shaffer*'s thirty-sixth footnote comfortably extends.

Afterall, the concern that undergirds *Shaffer*'s thirty-sixth footnote is that "a wrongdoer should not be able to avoid

payment of his obligations by the expedient of removing his assets to a place where he is not subject to an *in personam* suit." *Shaffer*, 433 U.S. at 210 (internal quotation marks omitted). This justification is no less relevant in permitting a court to enforce a previously rendered foreign arbitral award as it is in authorizing enforcement of a previously rendered judicial judgment. Holding otherwise would allow arbitral debtors to deliberately locate assets where courts would lack personal jurisdiction over them—an outcome that does not comport with "fair play" or "substantial justice." *Int'l Shoe*, 326 U.S. at 316. Consequently, we join several other courts in holding that the logic of *Shaffer*'s thirty-sixth footnote extends to an action to confirm and enforce an arbitral award under the New York Convention.[15] *See, e.g., Crescendo Mar. Co. v. Bank of Commc'ns Co.*, No. 15 CIV. 4481 (JFK), 2016 WL 750351, at *5 (S.D.N.Y. Feb. 22, 2016) (discussing *Shaffer* in the context of confirming a foreign arbitral award and determining that "[a]lthough the *Shaffer* Court was referring to the enforcement of sister-state judgments under the Full Faith and Credit Clause of the Constitution, the same reasoning applies here"); *Swiss Marine Servs. S.A. v. Louis Dreyfus Energy Servs. L.P.*, 598 F. Supp. 2d 414, 420 n.5 (S.D.N.Y. 2008) ("This Court believes that the *Shaffer* rational [as articulated in its thirty-sixth footnote] would apply with equal force to the enforcement of foreign arbitral awards."). Without regard to minimum contacts, a district court can exercise traditional attachment jurisdiction to enforce a foreign arbitral award. *See CME Media Enters.*, 2001 WL 1035138, at *3 ("Minimum contacts are not required because an arbitration panel with personal jurisdiction over [the defendant] has already adjudicated [the

---

[15] Indeed, counsel for Webuild essentially recognized as much at oral argument. Oral Arg. Tr. At 20:8–16.

petitioner]'s claims against [the defendant] and determined that he is a debtor of [the petitioner]; the purpose of the instant proceeding is to collect on that debt."). In other words, a court can exercise attachment jurisdiction based on the mere presence within the forum of an arbitral-award debtor's property, and the property does not need any relation to the underlying cause of action.

IV.

*Shaffer*'s thirty-sixth footnote does not preclude the District Court from determining whether Webuild is Astaldi's successor in interest (and thus, the arbitral award debtor). The District Court, assuming that *Shaffer*'s thirty-sixth footnote creates an exception permitting a court to exercise traditional attachment jurisdiction in a post-judgment action, alternatively held that "[b]ecause [SCMS] has not asked me to recognize, let alone enforce, in this action a determination by a court of competent jurisdiction that Webuild is its debtor . . . such an exception would not apply here." *Sociedad*, 2024 WL 4333144, at *2. But, as we have now held, *Shaffer*'s thirty-sixth footnote applies to enforcement of foreign arbitral awards, not just court judgments. And nothing in *Shaffer*'s thirty-sixth footnote precludes the District Court from determining whether Webuild assumed Astaldi's obligation under the award. SCMS brought this action and alleged that Webuild is Astaldi's successor in interest. In turn, Webuild raised as an affirmative defense that the District Court lacked personal jurisdiction. Once this defense is raised, the District Court must first determine whether the defense is meritorious, which includes considering evidence on the subject. *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[A] federal court always has jurisdiction to determine its own jurisdiction."). If the District Court determines that Webuild is Astaldi's successor in interest, then a "court of competent jurisdiction"

31

will have determined that "the defendant is a debtor of the plaintiff." *Shaffer*, 433 U.S. at 210 n.36.

The District Court has both the power and the obligation to determine whether Webuild is Astaldi's successor in interest. First, "federal courts have a 'virtually unflagging obligation' to exercise jurisdiction" where it exists. *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). A court must determine disputed jurisdictional facts, and this obligation extends as far as "conduct[ing] a plenary trial on the contested facts," if necessary, "prior to making a jurisdictional determination." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 343 (3d Cir. 2016) (quoting *Gould Elecs. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000)). Considering these principles together, because the District Court's jurisdiction depends on whether Webuild is Astaldi's successor in interest, the District Court has the power and the obligation to decide this question, regardless of how complex it may be.

Because the arbitrator already resolved the underlying controversy—SCMS's breach of contract claims against Astaldi—the only question left for the District Court to determine is whether Webuild is Astaldi's successor in interest. To the extent that Webuild characterizes this issue as a merits question, it makes no difference. The obligation to determine jurisdiction remains, even when the "merits and jurisdiction . . . come intertwined." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 178 (2017). Successor jurisdiction applies in all jurisdictional contexts, including to a case where jurisdiction depends on minimum contacts and a case (like this one) where minimum contacts are not required. *In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 824 (3d

Cir. 2005) (minimum contacts); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 649–55 (5th Cir. 2002) (waiver); *Bunge S.A. v. Pac. Gulf Shipping (Singapore) Pte. Ltd.*, No. 3:19-CV-00491-SB, 2020 WL 1528250, at *2 (D. Or. Mar. 31, 2020) (*quasi in rem*); *cf. Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) ("general alter ego principles . . . in the context of maritime attachments"); *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, No. 12 CIV. 5754 LAK AJP, 2013 WL 6799973, at *10 (S.D.N.Y. Dec. 20, 2013) (finding general jurisdiction over the alter ego and/or successor in interest of judgment debtor that does business in the forum state). And the District Court may exercise personal jurisdiction over a successor in interest even if it would have lacked personal jurisdiction over the predecessor. *See, e.g.*, *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 301 (M.D. Pa. 2018); *In re DES Cases*, 789 F. Supp. 552, 591 (E.D.N.Y. 1992). By failing to first determine whether Webuild is Astaldi's successor in interest, the District Court erred.

We decline SCMS's invitation to decide on appeal for the first time the complex, heavily factual successor-in-interest question. "When a district court has failed to reach a question below that becomes critical when reviewed on appeal, an appellate court may sometimes resolve the issue on appeal rather than remand to the district court." *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998). Generally, this procedure is "appropriate when the factual record is developed" and the issue is purely legal. *Id.* Here, the factual record is developed but not in the manner that *Hudson* contemplates. This record is "developed" in the sense that it is enormous: the parties submitted more than 150 pages of briefs and expert declarations, along with hundreds of pages of exhibits, devoted solely to whether Webuild assumed liability

for the award. App. 41–362, 367–844. However, Webuild's status as successor in interest likely requires delving into several underlying complexities, including whether Delaware or Italian law applies, the relation between the Italian *Concordata* and the Chilean arbitration, and the niceties of a multi-billion-dollar two-step merger and spin-off transaction that occurred in Italy. Therefore, the District Court should resolve this question in the first instance. *See Gov't of Virgin Islands v. Martinez*, 780 F.2d 302, 310 (3d Cir. 1985) ("It is not our role to find facts and resolve factual issues at the appellate level.").

V.

For these reasons, we will vacate the District Court's dismissal for lack of personal jurisdiction and remand to the District Court to determine whether Webuild is Astaldi's successor in interest and to conduct any other proceedings consistent with this opinion.

# ANNEX II

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 24-3005

———

SOCIEDAD CONCESIONARIA METROPOLITANA DE SALUD S.A.,
Appellant

v.

WEBUILD S.P.A

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1:23-cv-01175)
Chief District Judge: Honorable Colm F. Connolly

———

Argued October 1, 2025
Before: SHWARTZ, MATEY, and FISHER, *Circuit Judges*.

———

JUDGMENT

———

This cause came on to be heard on the record from the United States District Court
for the District of Delaware and was argued on October 1, 2025.

On consideration whereof, it is now hereby ORDERED and ADJUDGED that the
order of the District Court entered September 27, 2024, be and the same is hereby
VACATED and REMANDED. All of the above in accordance with the opinion of this
Court. Costs shall not be taxed.


Attest:

s/ Patricia S. Dodszuweit
Clerk

Dated: May 18, 2026